IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBIN ALEXANDER WOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:15cv188-WC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

## I.  INTRODUCTION

Robin Wood ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*, on November 23, 2011.  His application was denied at the initial administrative level on January 27, 2012.   Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision finding that Plaintiff had not been under a disability as defined in the Social Security Act, from July 7, 2011, through the date for his decision.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff appealed the ALJ's

---

[1]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

decision to the Appeals Council and his request for review was denied on January 23,

2015.  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to

28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and

entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s

Consent to Jurisdiction (Doc. 7); Def.'s Consent to Jurisdiction (Doc. 8).  Based on the

court's review of the record and the briefs of the parties, the court REVERSES the

decision of the Commissioner and REMANDS the matter for further proceedings.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is

unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to
> result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of
> Impairments]?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological
abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic
techniques.

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the

---

[3]   *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

[4]   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.   . . .   No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

At the time of the ALJ hearing, Plaintiff was forty-one years old.  Tr. 48.  He completed eleventh grade and does not have a GED.  *Id*.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since July 7, 2011, the alleged onset date[.]"  Tr. 33.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "obesity, asthma, hypertension, arthralgia, chronic obstructive pulmonary disorder (COPD), and a hernia."  Tr. 33.  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  Tr. 34.  Next, the ALJ articulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot climb ladders, ropes, or scaffolds; cannot crawl or kneel; can occasionally climb ladders, ropes or scaffolds; can occasionally stoop and crouch; can frequently balance; should avoid concentrated exposure to heat, cold, and wetness; should avoid moderate exposure to fumes, gasses, and other pulmonary irritants; and should have no exposure to unprotected heights or hazardous machinery.

Tr. 34-35.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "unable to perform any past relevant work[.]"  Tr. 38.  Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines," there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 39.  The ALJ identified several representative occupations, including "Table Worker," "Machine Tender," and "Sorter."  Tr. 39.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from July 7, 2011, through the date of this decision[.]"  Tr. 39.

## IV.    PLAINTIFF'S CLAIM

Plaintiff presents one argument before the court: the Commissioner committed reversible error in failing to find that Plaintiff's asthma meets, or equals, the criteria of Listing 3.03(B).  Pl.'s Br. (Doc. 12) at 3.

## V.    DISCUSSION

Plaintiff argues that the Commissioner erred at Step Three when he determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of the asthma listing.  *Id*.  Listing 3.03 requires asthma with:

(A)    Chronic asthmatic bronchitis[5]

---

[5] The ALJ determined that Plaintiff did not meet Listing 3.03(A) because Plaintiff's FEV1 did not fall within the specified range for chronic asthmatic bronchitis.  Tr. 34.  Plaintiff does not dispute this finding.

Or

(B)     Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention occurring at least once every 2 months or at least six times a year.  Each in-patient hospitalization for longer than 24 hours counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. § 404, Subpt. P, App. 1.   Section 3.00C defines "attacks" as "prolonged systematic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting." *Id*. § 3.00C. Thus, a claimant must show that his attacks were frequent enough – occurring every two months or at least six times per year within a twelve month period – and severe enough – requiring intensive treatment including intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy – to meet or equal the listing.   *Id*. §§ 3.03(B), 3.00C.   Further, this threshold must be met in spite of the claimant's compliance with his prescribed treatment.  *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability).   If the claimant does not meet the listing due to noncompliance, the Commissioner must show the claimant's noncompliance was unjustified. *Id.* at 1214 at n.* (11th Cir. 1988) (citing *Preston v. Heckler*, 769 F. 2d 988, 990-91 (4th  Cir. 1985)); SSR 82-59, 1982 WL 31384 (Jan. 1, 1982) (where it is determined that a claimant fails to follow prescribed treatment, a determination must also

7

be made as to whether failure to follow is justifiable).   Specifically, the ALJ must develop a record establishing by substantial evidence that "had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored."   *Id.* at 1213 (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Patterson v. Bowen*, 799 F.2d 1455, 1460 (11th Cir. 1986)).   The ALJ must also consider reasons for a claimant's noncompliance, if any, and whether those reasons excuse noncompliance. [6] SSR 82-59.

In this case, it is unclear why the ALJ determined that Plaintiff did not meet Listing 3.03(B), and thus the court cannot assess whether substantial evidence supports the ALJ's determination.   At Step Three, the ALJ simply stated that Plaintiff lacked documentation that he "has had asthma attacks in spite of his prescribed treatment, and requiring physician intervention which have occurred at least once every 2 months or at least 6 times a year."   Tr. 34.   Because the ALJ essentially restated Listing 3.03(B), the court is left to guess whether the ALJ determined that Plaintiff did not meet the listing

---

[6] Social Security Ruling 82-59 states, in part:

> The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment.   Detailed questioning may be needed to identify and clarify the essential factors of refusal. . . .

> The record must reflect as clearly and accurately as possible the claimants . . . reason's for failing to follow the prescribed treatment.

> Individuals should be asked to describe whether they understand the nature of the treatment and the probable course of the medical condition (prognosis) with and without the treatment prescribed. . . . They should be made aware that the information supplied will be used in deciding the disability claim and that, because of the requirements of the law, continued failure to follow prescribed treatment without good reason can result in denial or termination of benefits. . . .

because (1) Plaintiff did not have enough qualifying attacks, or (2) Plaintiff was noncompliant.  In either case, the court cannot conduct a meaningful review of the ALJ's determination.

*Qualifying Attacks*

Plaintiff supports his argument that the ALJ erred by asserting that he had a sufficient number of qualifying attacks to meet Listing 3.03(B).  Plaintiff states that he was hospitalized on three occasions for more than twenty-four hours within a twelve month period with asthma, COPD, or asthma/COPD related diagnoses.[7]  Pl.'s Br. (Doc. 12) at 4.  While it is true that Plaintiff meets these logistical requirements, it is unclear whether these hospitalizations were severe enough – *i.e*., that Plaintiff required intensive treatment – to qualify as attacks.  *See* 20 C.F.R. § 404.1525(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis.")

Plaintiff's medical records before the ALJ describe the course of treatment he received during his hospitalizations.  These records indicate that Plaintiff received

---

[7]  Plaintiff's first hospitalization was on November 10, 2011, to Jackson Hospital.  Plaintiff was discharged November 11, 2011, with a diagnosis that included acute and chronic asthma and asthma with status astmaticus.  Tr. 256, 258.  While hospitalized, Plaintiff was given IV steroids and Albuterol and Atrovent by updraft.  Tr. 258.

Plaintiff's second hospitalization was on January 26, 2012, to Baptist Medical Center South.  Tr. 271-308.  Plaintiff was discharged on January 27, 2012, with a diagnosis that included COPD and asthma exacerbation.  Tr. 272.  While hospitalized, Plaintiff was given Clairitin and Singulair, DuoNeb, and a saline wash.  Plaintiff received IV medications.  Tr. 254.  A blood gas was performed, with no abnormal or critical findings.  Tr. 295.  A chest x-ray showed no acute or chronic cardiopulmonary disease.  Tr. 262

Plaintiff's third hospitalization was on July 27, 2012, to Baptist Medical Center South.  Tr. 321-350.  Plaintiff was discharged on July 28, 2012, with a diagnosis that included COPD with acute exacerbation.  Tr. 323.  While hospitalized, Plaintiff was given scheduled updrafts as well as steroids, and prescribed Spiriva and Advair.  *Id*.  A chest x-ray showed no acute findings.  *Id*.  A blood gas test was performed and was within the normal limits.  Tr. 328.

intravenous steroids and asthma medications by updraft therapies.  Tr. 254, 272, 323. Blood gas tests and chest x-rays were also performed.  Tr. 262, 289, 335. Whether these treatment regimens were intense enough to satisfy Listing 3.03(B) is unclear because the ALJ's opinion is devoid of analysis of Plaintiff's hospitalizations.  Indeed, the ALJ merely references Plaintiff's hospitalizations and treatments during his assessment of Plaintiff's residual functional capacity.  Tr. 36.  As it is unclear whether the ALJ considered these hospitalizations in determining that Plaintiff did not meet Listing 3.03(B), the court cannot conduct a meaningful review of whether the ALJ's decision was supported by substantial evidence.  *But see Helwig v. Colvin*, 3:14cv1503, 2015 WL 5749521, at *1-2 (N.D. Ohio Sept. 30, 2015) (upholding the ALJ's determination that claimant did not meet asthma listing because there was substantial evidence that claimant's treatment involved mainly aerosol treatments and non-intravenous medications); *Walunga v. Colvin*, 13cv0759, 2014 WL 2931927, at *5-6 (N.D. Ill. June 23, 2014) (upholding the ALJ's determination that claimant did not meet asthma listing because the ALJ built the requisite "logical bridge from his evidence to his conclusion").

*Compliance*

As previously noted, if it is determined that a claimant does not meet a listing due to noncompliance, the ALJ must set forth the reasons for such a determination.  *Dawkins*, 848 F.2d at 1213-14.  The record should be developed to include: (1) whether compliance would have restored Plaintiff's ability to work; (2) the reasons for Plaintiff's

noncompliance, if any; and (3) whether these reasons excused Plaintiff's noncompliance. *See generally Pelham v. Astrue*, No. 5:11-cv-01354-KOB, 2012 WL 4479287, at *9 (N.D. Ala. Sept. 21, 2012) (holding that the ALJ erred in failing to adhere to the procedural requirements of SR 82-59 to fully develop the record and provide sufficient notice and opportunity to the claimant to prove justifiable cause for failing to follow treatment).   Further, "when an ALJ relies on noncompliance as the *sole* ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is *required* to determine whether the claimant was able to afford the prescribed treatment."   *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins*, 848 F.2d at 1213) (emphasis added).   "[W]hile a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.'" *Dawkins*, 848 F.2d at 1213 (citing *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th   Cir. 1986)).   Thus, a claimant's poverty excuses his noncompliance.   *Brown v. Commissioner of Social Security*, 425 F. App'x 813, 817 (11th Cir. 2011).

Plaintiff argues that the ALJ erred because the ALJ failed to excuse his noncompliance due to poverty.   (Doc. 12) at 4-6.   Plaintiff asserts, and his medical records support, that during each hospital visit, Plaintiff reported not taking his medications because he could not afford them.   Tr. 258, 272, 327.   Plaintiff also testified

before the ALJ that he was homeless and living with a friend at the time of the hearing. Tr. 47-48.   This evidence should have triggered additional inquiry from the ALJ regarding Plaintiff's noncompliance and poverty, including whether compliance would have restored Plaintiff's ability to work and Plaintiff's reasons, if any, for noncompliance.   *See Pelham*, 2012 WL 4479287, at *9.   Plaintiff should have been given an opportunity to fully express his reasons for not complying with treatment and the ALJ should have taken those reasons under advisement in determining whether Plaintiff's noncompliance was excusable.   *See* SSR 82-59.   Instead, the ALJ appears to assume that Plaintiff has the means to obtain medication because he was able to do so on previous occasions.[8]

While it is unclear whether the ALJ determined that Plaintiff did not meet the asthma listing due to noncompliance, it is clear that the ALJ heavily relied upon such evidence in his overall evaluation of Plaintiff's disability without having queried Plaintiff about the nature or reasons for his noncompliance.   In determining Plaintiff's residual functional capacity, the ALJ stated that Plaintiff's "COPD and asthma are both well controlled with medication. . . . The *only* exacerbations the claimant had were in conjunction with noncompliance."   Tr. 37 (emphasis added).   And later again, the ALJ stated "[a]s the medical evidence of record indicates the claimant *only* experienced

---

[8] Although the ALJ never references how Plaintiff previously obtained his medication, Plaintiff's medical records indicate that he was able to obtain medication at certain points in time.   Tr. 36, 310, 381.   Plaintiff also testified in April 2013 that he was taking asthma medication.   Tr. 52.

COPD/asthma exacerbations related to noncompliance." Tr. 38 (emphasis added). To the extent the ALJ relied upon Plaintiff's noncompliance as the principal factor in determining that Plaintiff did not meet the asthma listing, the ALJ should not have drawn an adverse inference without first considering whether Plaintiff was able to afford the medical care. *Brown*, 425 F. App'x at 817. To the extent the ALJ did so, it is reversible error. *See e.g., Dawkins*, 848 F.2d at 1214 (reversed and remanded to determine whether appellant is disabled, without reference to her failure to follow prescribed medical treatment, and if so, whether the claimant is in fact unable to afford medication and treatment as prescribed); *Hill v. Astrue*, 1:09cv01-CSC, 2010 WL 1533121, at *6 (M.D. Ala. Apr. 15, 2010) (reversed and remanded to develop the record regarding claimant's financial situation as it relates to his failure to seek treatment); *Baker v. Astrue*, 1:11cv35-CSC, 2012 WL 353738, at *5 (M.D. Ala. Feb. 2, 2012) (reversed and remanded to fully and fairly develop the record regarding claimant's failure to follow prescribed treatment).

Because it is unclear on what basis the ALJ determined Plaintiff did not meet the asthma listing, the court is left lacking sufficient information to determine if the ALJ's decision was supported by substantial evidence. As the court cannot conduct a meaningful review, the matter is due to be remanded so that the ALJ can clarify his findings and further develop the record, if needed.

13

**VI.    CONCLUSION**

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner.  A separate judgment will issue.

Done this 3rd day of March, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE

14